IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| SCOTT HILDRETH, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:15-cv-831-NJR-DGW |
| | ) | |
| KIM BUTLER, LORI OAKLEY, MARVIN | ) | |
| BOCHANTIN, DAWN MARCINKOWSKA, | ) | |
| DAVID L. DWIGHT, WEXFORD HEALTH, | ) | |
| JANE DOE, and LT. JOHN DOE, | ) | |
| | ) | |
| Defendants. | ) | |

# REPORT AND RECOMMENDATION

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Nancy J. Rosenstengel pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a). For the reasons set forth below, it is **RECOMMENDED** that the Motion for Summary Judgment filed by Defendants Butler, Schwarz, Oakley, Bochantin[1], Lashbrook, Marcinkowska, and Dwight (Doc. 40) be **GRANTED IN PART, DENIED IN PART AND FOUND MOOT IN PART** and the Motion for Summary Judgment filed by Defendant Wexford Health Sources, Inc. (Doc. 42) be

---

[1] Despite being included in the caption of Plaintiff's amended complaint, there is no claim set forth against Defendant Marvin Bochantin (*see* Doc. 26). However, this Defendant filed an answer and a motion for summary judgment on the issue of exhaustion. The Court cannot provide a recommendation as to whether or not Plaintiff exhausted any claim against Bochantin as there is no discernable claim pending against him. On this basis, the Court recommends that Defendant Bochantin's filings in this matter be **STRICKEN** and that his motion for summary judgment be found **MOOT**.

**DENIED**, and that the Court adopt the following findings of fact and conclusions of law.

### FINDINGS OF FACT

Plaintiff Scott Hildreth, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. §1983 alleging his constitutional rights were violated while he was incarcerated at Menard Correctional Center ("Menard"). Following the filing of his initial complaint, Plaintiff was appointed counsel who filed an amended complaint on his behalf. The amended complaint was screened and Plaintiff was allowed to proceed on the following claims:

> Count One: Discrimination and deprivation of rights claim against Defendants Butler, Schwarz, Oakley, Lashbrook, Marcikowska, and Dwight, for discriminating against Plaintiff and denying him reasonable accommodation for his disabling Parkinson's disease condition (specifically, access to the prison law library), in violation of the American with Disabilities Act and 42 U.S.C. §1983;
>
> Count Two: Delayed medical attention against Defendants Butler, Schwarz, and Oakley for failing to timely refill Plaintiff's necessary prescription medications, causing his Parkinson's symptoms to worsen and causing serious withdrawal side effects, in violation of the Eighth and Fourteenth Amendments;
>
> Count Three: Delayed medical attention against Defendant Wexford for maintaining policies and customs that caused the violations in Count Two.

Defendants Butler, Schwarz, Oakley, Bochantin, Lashbrook, Marcinkowska, and Dwight, as well as Defendant Wexford filed motions for summary judgment on the issue of exhaustion (Docs. 40 and 42). Defendants Schwarz and Lashbrook were dismissed from this action without prejudice following their filing of a motion for summary judgment on exhaustion (*see* Doc. 49). Accordingly, their argument for summary judgment on the issue of exhaustion is **MOOT**. Defendants contend that although Plaintiff filed some grievances related to the issues in this

lawsuit, he failed to follow procedure and adequately exhaust said grievances prior to filing. Plaintiff timely responded to Defendants' motions pointing to a number of grievances he argues are sufficient to exhaust his claims.

There are eight grievances in the record before the Court that have been introduced by the parties relevant to the question of exhaustion. The Court considers each grievance in turn, as set forth below.

1. **June 21, 2012 grievance** (Doc. 46-1): In this grievance, Plaintiff complained that his typewriter was taken away and he was unable to complete legal work due to his Parkinson's disease. Plaintiff indicated he tried to resolve this issue with the staff, an assistant warden and clinical services. Plaintiff asked for a word processor and other "necessary items" so that he could communicate like any other inmate. Plaintiff's counselor responded to this grievance on July 10, 2012. The Grievance Officer denied Plaintiff's grievance on July 2, 2012, but indicated that a counselor would be making increased contact with Plaintiff to assist him with any issues. The Warden concurred with the Grievance Officer's response on July 3, 2012. There is no indication that this grievance was submitted to the ARB on appeal.

2. **July 7, 2012 grievance** (Doc. 46-3): Although difficult to read, it appears that in this grievance Plaintiff was again complaining about the confiscation of his typewriter. In particular, Plaintiff asserted his inability to write legibly and meaningfully communicate with others had the effect of denying him access to the courts. Plaintiff asked for compensation or an accommodation for his disability. Plaintiff's counselor responded to this grievance on July 10, 2012 indicating that he would have access to a typewriter in the law library two days a week. The counselor also indicated that he would be seen by someone from clinical services the other

three business days each week to assist him with whatever correspondence he needed during that time. There is no other documentation concerning this grievance.

3. **April 8, 2014 emergency grievance** (Doc. 46-4): In this grievance, Plaintiff indicated he was out of his Parkinson's medication and had been telling staff and nurses of this issue "for days", but had not yet received a prescription refill. The Warden expedited this grievance as an emergency on April 14, 2014 and it was denied as moot by the Grievance Officer on April 15, 2014. The Grievance Officer noted that Plaintiff was seen on April 9, 2014 and his medication was renewed for one year on that date. The Warden concurred with the Grievance Officer's response on April 17, 2014. There is no indication that this grievance was appealed to the ARB.

4. **October 25, 2014 emergency grievance** (Doc. 46-6): In this grievance, Plaintiff again complained about a lapse in his Parkinson medication. The Warden expedited review of this grievance on November 5, 2014 and the Grievance Officer found it to be moot on November 6, 2014 noting that Plaintiff was given his medications on October 30, 2014. There is no indication that this decision was appealed to the ARB.

5. **October 30, 2014 grievance** (Doc. 46-8): In this grievance, Plaintiff indicated he needed staff assistance to complete grievances and noted lapses in his medication and issues with ADA accommodations. Plaintiff's counselor responded to this grievance on October 31, 2014 and the Grievance Officer found Plaintiff's complaints moot on March 13, 2015 indicating that Plaintiff has already been provided with additional library time. The Warden concurred with the Grievance Officer's decision on March 19, 2015. There is no indication that this decision was appealed to the ARB.

6. **May 29, 2015 grievance** (Doc. 46-10): In this grievance, Plaintiff asked for staff assistance in filing for ADA accommodations and grievances. There is no counselor response on this grievance, but the Grievance Officer addressed it on the merits on August 4, 2015 finding it to be moot and noting that accommodations are already in place to provide Plaintiff assistance with documents and writing. The Warden concurred with the Grievance Officer's decision on August 6, 2015. There is no indication that this grievance was appealed to the ARB.

7. **November 16, 2015 emergency grievance** (Doc. 43-4): In this grievance, Plaintiff complained that he had not received his Parkinson's medication. The Warden determined that this grievance would be handled on an expedited basis and the Grievance Officer responded on November 23, 2015 finding the grievance moot. The Grievance Officer determined that Plaintiff was being afforded medical treatment. The Warden concurred with the Grievance Officer's decision on November 25, 2015 and Plaintiff appealed the decision to the ARB on December 2, 2015. The ARB received the grievance on December 29, 2015, but refused to consider it on the merits noting that it was "[n]ot submitted in the timeframe outlined in Department Rule 504" (Doc. 43-6).

8. **March 17, 2016 grievance** (Doc. 41-1): In this grievance, Plaintiff complained that he was being denied accommodations for his Parkinson's disease. Plaintiff's counselor responded to this grievance on April 1, 2016. The Grievance Officer found it moot on June 9, 2016 noting that Plaintiff was being provided with ADA accommodations and access to the law library. The Warden concurred with the Grievance Officer's response on June 17, 2016. The Grievance Officer's and CAO's response were stamped as "Received" by the ARB on June 30, 2016. There is no ARB response in the record.

*Pavey Hearing*

Pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the Court held a hearing on the issue of exhaustion on April 18, 2017. At the hearing, Plaintiff, through counsel, relied on his argument invoking *Thornton v. Snyder*, 428 F.3d 690 (7th Cir. 2005) that the grievances addressed by the Grievance Officer and deemed moot or otherwise adequately addressed were sufficiently exhausted. Plaintiff also asserted that when viewed as a whole, Plaintiff's complaints about lapses in receiving his prescription medications indicated an ongoing issue, sufficient to exhaust his claim against Wexford. The IDOC Defendants argued that these grievances fail to exhaust the claims against them as they were not specifically identified by Plaintiff. Defendant Wexford asserted that Plaintiff's reliance on *Thornton* is misplaced as he did not receive all of the relief he requested.

## LEGAL STANDARDS

*Summary Judgment Standard*

Summary judgment is proper only if the moving party can demonstrate "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.,* 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a

matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. The Seventh Circuit has stated summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

*Exhaustion Requirements under the PLRA*

> The Prison Litigation Reform Act provides:
>
> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*, 182 F.3d 532, 534-535 (7th Cir. 1999) (stating that § 1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. See *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id*. at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding the PLRA requires proper

exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. In *Pavey*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff has exhausted his remedies. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). If a Plaintiff has exhausted his remedies, the case will proceed on the merits. If, however, a Plaintiff has not exhausted, the Court may either allow Plaintiff to exhaust or terminate the matter.

*Exhaustion Requirements under Illinois Law*

Under the procedures set forth in the Illinois Administrative Code, an inmate must first attempt to resolve a complaint informally with his Counselor. ILL. ADMIN. CODE TIT. 20, § 504.810(a). If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. *Id*. § 504.810(b). The grievance officer is required to advise the CAO at the facility in writing of the findings on the grievance. *Id*. § 504.830(d). The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. *Id*. § 504.830(d). An inmate may appeal the decision of the CAO in writing within 30 days to the ARB for a final decision. *Id*. § 504.850(a). *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). An inmate's administrative remedies are not exhausted until the appeal is ruled on by the ARB. *See Id*. The ARB shall make a final determination of the grievance within six months after receipt of the appealed grievance, where reasonably feasible under the circumstances. *Id*. § 504.850(f).

An inmate may request a grievance be handled as an emergency by forwarding it directly to the CAO. If the CAO determines there exists a substantial risk of imminent personal injury or

other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken. *Id*. § 504.840. If, after receiving a response from the CAO, an offender feels the grievance has not been resolved, he may appeal in writing to the ARB within 30 days after the date of the CAO's decision. *Id*. § 504.850(a).

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id*. Prisoners are required only to provide notice to "responsible persons" about the complained of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

### CONCLUSIONS OF LAW

In determining whether Plaintiff exhausted his administrative remedies, the Court first considers whether any of the eight grievances in the record exhausted all available administrative remedies. At the outset, the Court notes that the March 17, 2016 grievance was filed after Plaintiff initiated this lawsuit and just one month after his amended complaint was filed. Indeed,

the Warden did not provide her response to this grievance until *after* the amended complaint was filed. Thus, it is apparent that this grievance is insufficient to exhaust any of Plaintiff's pending claims and will not be addressed further.

With regard to Plaintiff's November 16, 2015 grievance, Defendants argue it was never exhausted as the ARB received it beyond the allowable timeframe and did not address it on the merits. As it appears on the face of this grievance, Plaintiff attempted to appeal the Warden's decision to the ARB on December 2, 2015, approximately one week after the Warden responded. Although the ARB did not receive this grievance until December 29, 2015, four days after the thirty day timeframe, Defendants have not provided any evidence that any delay in the receipt of the grievance was due to an action (or inaction) taken by Plaintiff. As Plaintiff is only able to rely on his institution and its practices of sending mail and has no influence on how, or how quickly, materials are sent out, the Court finds Plaintiff made sufficient efforts to timely appeal this grievance, but such efforts were thwarted. Accordingly, the Court finds the November 16, 2015 grievance was sufficiently exhausted prior to the filing of his amended complaint.

With regard to the other six grievances in the record dated June 21, 2012, July 7, 2012, April 8, 2014, October 25, 2014, October 30, 2014, and May 29, 2015, Plaintiff relies on *Thornton* and argues that because Plaintiff received the relief he was seeking, there was no issue left to appeal to the ARB. Accordingly, Plaintiff contends these grievances were sufficiently exhausted. Defendants argue that because Plaintiff did not receive all of the relief he was requesting, the circumstances here are distinguishable from *Thornton* and Plaintiff was still required to submit his grievances to the ARB for review. Plaintiff's grievances dated April 8, 2014 and October 25, 2014 squarely complain about lapses in the dispensation of Plaintiff's

Parkinson's medication. The Grievance Officer found both of these grievances moot noting Plaintiff had received his medication. Clearly, Plaintiff received the relief he was requesting with regard to these grievances. As remarked by the Seventh Circuit in *Snyder*, not only is it counter-intuitive to require Plaintiff to appeal to higher channels after receiving the relief he requested, but it is not required by the PLRA. 428 F.3d at 697. As it is apparent there was no further relief available with regard to Plaintiff's April 8, 2014 and October 25, 2014 grievances, the Court finds they were sufficiently exhausted.

Next, the Court considers the applicability of *Thornton* to Plaintiff's June 21, 2012, July 7, 2012, October 30, 2014, and May 29, 2015 grievances. It is apparent that in his June 21, 2012 grievance, Plaintiff was seeking particular relief — mainly asking to procure a small printer or thumb drive so that he could print from a word processor. Plaintiff also asked for a word processor and necessary items so that he may be able to communicate like any other inmate. This grievance was denied by the Grievance Officer; however, Plaintiff was advised that the counselor would be making increased contact to assist with issues he may incur. Even when construed liberally, Plaintiff did not receive the relief he was requesting in this grievance. Accordingly, the Court finds that *Thornton* is not applicable to this grievance as additional remedies (i.e. procurement of a word processor or printer) were still available. Plaintiff's July 7, 2012 grievance is a much closer call. In this grievance (from what the Court can discern), Plaintiff asked more generally for an accommodation to address his inability to write legibly and to communicate like any other inmate. Plaintiff's counselor indicated that he would be given access to a typewriter in the law library two days a week and would be seen by someone from clinical services on the other three days to assist him in preparing whatever correspondence he

may need. The Court finds Plaintiff received the relief he was requesting and, as such, the reasoning of *Thornton* is applicable to his July 7, 2012 grievance. Therefore, the Court considers this grievance exhausted. Finally, the Court finds the reasoning of *Thornton* to be applicable to his October 30, 2014 and May 29, 2015 grievances as Plaintiff sought assistance in filing grievances and the Grievance Officer indicated that Plaintiff could request assistance from inmates in preparing his grievances while in the library and indicated that accommodations were already in place.

Based on the foregoing, the Court finds Plaintiff exhausted his administrative remedies as to his grievances dated July 7, 2012, April 8, 2014, October 30, 2014, October 25, 2014, May 29, 2015, and November 16, 2015. The Court's inquiry, however, does not end here. Plaintiff may only continue in this lawsuit insofar as his grievances complained about the actions taken by Defendants in this lawsuit.

Defendants Butler, Oakley, Marcinkowska, and Dwight contend that Plaintiff's grievances are insufficient to exhaust any claims against them as Plaintiff does not sufficiently name, describe, or complain about them or their actions in these grievances, as required by ILCS § 504.810(c). Although it is apparent that Plaintiff did not specifically name these Defendants in his grievances, such circumstance is not fatal to the question of exhaustion. Plaintiff need only describe a defendant with as much detail as possible under the Illinois Administrative Code in order to serve the PLRA's purpose of affording prison officials a chance to address inmate complaints internally, prior to the filing of federal litigation and to provide prison officials a "fair opportunity" to address an inmate's complaint. *See, e.g., Kaba*, 458 F.3d at 684 (citation omitted); *see also Maddox v. Love*, 655 F.3d 709, 713 (7th Cir. 2011).

With regard to Plaintiff's claims against Defendants Butler, Oakley, Marcikowska, and Dwight in Count One, the Court finds Plaintiff's May 29, 2015 grievance sufficient to identify and, accordingly, exhaust this claim as to Defendants Oakley and Butler. Specifically, in his May 29, 2015 grievance, Plaintiff renews his request for staff assistance in filing grievances indicating that he has asked before and was either refused or denied. Plaintiff's previous grievances regarding this issue and, in particular, his October 30, 2014 grievance was found moot by both Defendant Oakley and Defendant Butler. Accordingly, the institution was given sufficient notice that the complaints lodged in Plaintiff's May 29, 2015 addressed actions taken by these Defendants. The Court, however, does not find sufficient evidence that Plaintiff's grievances sufficiently described Defendants Marcikowska or Dwight to exhaust his discrimination claim against these defendants. Accordingly, the Court recommends that Defendants Marcikowska and Dwight be dismissed from this action without prejudice.

With regard to Plaintiff's claims against Defendants Butler and Oakley in Count Two, the Court finds Plaintiff's grievances fail to sufficiently complain about the actions of these Defendants. While Defendants Oakley and Butler reviewed some of Plaintiff's grievances concerning lapses in his prescription medications, there are no grievances complaining about any action taken by these Defendants related to delaying medical attention for Plaintiff. As neither Defendants nor any actions taken by these Defendants related to the provision of medical care are specified in any of Plaintiff's grievances, the Court recommends that Count Two against Defendants Butler and Oakley be dismissed without prejudice.

Plaintiff's grievances dated April 8, 2014, October 25, 2014, and November 16, 2015 are sufficient to exhaust Plaintiff's claim against Defendant Wexford. These grievances complain

about ongoing issues with lapses in the distribution of Plaintiff's prescription medications. Thus, a plain reading of these grievances establishes Plaintiff is complaining about ineffective or insufficient policies for the distribution of medications. The Court, therefore, recommends that Plaintiff be allowed to proceed against Defendant Wexford in Count Three.

### RECOMMENDATIONS

Based on the foregoing, it is hereby **RECOMMENDED** that the Motion for Summary Judgment filed by Defendants Butler, Schwarz, Oakley, Bochantin, Lashbrook, Marcinkowska, and Dwight (Doc. 40) be **GRANTED IN PART, DENIED IN PART AND FOUND MOOT IN PART** and the Motion for Summary Judgment filed by Defendant Wexford Health Sources, Inc. (Doc. 42) be **DENIED**; that the Court **FIND** that Plaintiff did not exhaust his administrative remedies prior to filing suit against Defendants Marcinkowska and Dwight; that Count One against Defendants Marcinkowska and Dwight be **DISMISSED WITHOUT PREJUDICE**; that Count Two be **DISMISSED WITHOUT PREJUDICE**; and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

If this Report and Recommendation is adopted in its entirety, Plaintiff will be proceeding on the following claims:

Count One: Discrimination and deprivation of rights claim against Defendants Butler and Oakley for discriminating against Plaintiff and denying him reasonable accommodation for his disabling Parkinson's disease condition (specifically, access to the prison law library), in violation of the American with Disabilities Act and 42 U.S.C. §1983; and

Count Three: Delayed medical attention against Defendant Wexford for maintaining policies and customs that caused Plaintiff's Parkinson's symptoms to worsen causing serious withdrawal side effects, in violation of the Eighth and Fourteenth Amendments.

**DATED: May 18, 2017**

*/s/ Donald Wilkerson*

**DONALD G. WILKERSON**
**United States Magistrate Judge**